OPINION OF THE COURT
James C. Harberson, Jr., J.
Facts
Robert Horowitz was operating his vehicle on Arsenal Street in the City of Watertown going west on Arsenal Street. He was in a line of traffic that after the light turned green at the *416 intersection with Sherman Street moved forward at a steady but sluggish pace. At the time he entered the intersection in the line of traffic there was no indication he could not clear the intersection because the light had just turned green and the movement of the vehicles in front of him had been slow but continuous. At some point while his car was still moving through the intersection the line of traffic ahead of him stopped, leaving him short of clearing it. After this line of traffic ahead of him finally moved forward he continued on his way until he was stopped by Officer Comins to issue him a ticket for violating Vehicle and Traffic Law § 1175 for obstructing traffic at the intersection.
Officer Erica Comins testified that Arsenal Street on the day in question had very heavy traffic. She elected to place herself 30 to 40 feet west of the intersection with Sherman Street looking at the traffic moving toward her.
She said that “as the light turned green” facing the line of traffic the defendant was located in on Arsenal Street the line of traffic in that lane entered into the intersection with Sherman Street and moved forward slowly at five miles per hour without stopping until a light at the next intersection, a quarter of a mile away, turned red at which time the whole line of traffic in which the defendant was driving stopped at once for the first time after initially traveling through the Arsenal-Sherman intersection moments earlier.
Officer Comins said that the defendant’s car was still in the intersection when the line of traffic he was in stopped, that the traffic he was in stopped for the final minute the light was green as well as for the whole time the light was red-green for Sherman Street traffic, and it was not until it recycled to green again for his traffic lane that the line of traffic ahead of the defendant started to move forward so he could exit the intersection he had been trapped in when the line of traffic originally stopped minutes earlier.
Officer Comins did not testify that at the time the defendant entered the intersection “vehicular traffic was stopped on the opposite side” of it. She testified that a reasonable driver would have realized that due to the circumstances at the time the defendant entered into the intersection he could not complete his transit through it due to the slow pace (five miles per hour in her estimate) and he should have delayed entering into it until the car ahead of him had cleared the intersection to a point on the other side that there was sufficient room for the defendant to know he could clear the intersection once he entered it.
*417 Decision
Vehicle and. Traffic Law § 1175 states that “when vehicular traffic is stopped on the opposite side of an intersection, no person shall drive a vehicle into such intersection . . . notwithstanding the indication of a traffic control signal which would permit him to proceed.”
Vehicle and Traffic Law § 1175 requires a motorist when presented with “stopped” traffic on the “opposite side of an intersection” to not “drive a vehicle into such intersection” until the traffic in the lane ahead of him clears to the point there is room for his car to clear the intersection after he crosses it.
In this case the traffic ahead of the defendant was not “stopped” when he came to the intersection but rather was moving slowly at five miles per hour through it without hesitation. The officer acknowledged this was true and testified that it was only after the defendant was within the intersection that the whole line of traffic of which he was a part stopped together in response to a red light at an intersection a quarter of a mile ahead of the one the defendant found himself in when the line of traffic stopped.
While the officer agreed that there was no “stopped” traffic ahead of the defendant “on the opposite side” of the intersection when he entered it, he should, as a reasonable motorist informed solely by the slow pace of the traffic, have discerned it might stop and in anticipation of such a possibility not entered the intersection until the car ahead of him moved through it to a point there was room for his car on the other side to clear the intersection.
This is not what the law requires. It is only “[w]hen vehicular traffic is stopped on the opposite side of an intersection . . . [that] no person shall drive into such intersection” (Vehicle and Traffic Law § 1175), not that it might stop before a motorist can cross the intersection. Otherwise any driver who entered an intersection while cars are moving through it, who is forced to stop within it due to an accident, the passing of an emergency vehicle or, as in this case, traffic stopping for another traffic signal a quarter of a mile ahead and was forced to remain within it until the light turned red, would be guilty of violating this provision of the Vehicle and Traffic Law which is not the intent of the law.
The charge against Mr. Horowitz is dismissed.